ACCEPTED
12-14-00336-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
5/26/2015 10:40:11 AM
CATHY LUSK
CLERK

**No. 12-14-00336-CV**

IN THE

TWELFTH COURT OF APPEALS

AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

5/26/2015 10:40:11 AM

CATHY S. LUSK
Clerk

FREDERICK DAWSON GRAHAM, Appellant

v.

DENA MARIE TURNER, Appellee

Appealed from the County Court at Law of

Nacogdoches County, Texas

Trial Court Cause Number:        C1228635

**APPELLEE'S BRIEF**

Counsel for Appellee:

Jarett T. LaRochelle
Texas Bar Number: 24041296
One Riverway, Suite 1700
Houston, Texas 77056
713-907-8668 telephone
713-840-6351 facsimile

**Identity of Parties and Counsel**

Appellee certifies that this is a list of all parties to the trial court's judgment, and the names, addresses, and telephone numbers of all trial and appellate counsel:

**Appellant:** FREDERICK DAWSON GRAHAM

> **Counsel:** Mr. Tom Rorie
> State Bar No. 17238000
> 210 North Street
> Nacogdoches, Texas 75961
> 936-559-1188 telephone
> 936-559-0099 facsimile

**Appellee:** DENA MARIE TURNER

> **Counsel:** Mr. Jarett T. LaRochelle
> State Bar No. 24041296
> One Riverway, Suite 1700
> Houston, Texas 77056
> 713-907-8668 telephone
> 713-840-6351 facsimile

**Oral Argument is Unnecessary**

Appellee would allege and show that oral argument is unnecessary herein on each of the grounds provided in Rule 39.1 of the Texas Rules of Appellate Procedure, i.e. (a) the appeal is frivolous; (b) the dispositive issues have been authoritatively decided; (c) the facts and legal arguments are adequately presented in the briefs and record; and (d) the decisional process would not be significantly aided by oral argument.

# Table of Contents

Identity of Parties and Counsel ............................................................2

Oral Argument is Unnecessary ............................................................2

Index of Authorities ............................................................................3

Statement of the Case..........................................................................4

Issues Presented ..................................................................................4

Statement of Facts ...............................................................................5

Summary of the Argument...................................................................14

Argument.............................................................................................15

Conclusion ..........................................................................................31

Prayer ..................................................................................................32

Certificate of Compliance ...................................................................33

Certificate of Service ..........................................................................33

## Index of Authorities

*Aaron v. Aaron*, 2012 Tex.App. LEXIS 769                                     22, 24
    (Tex.App.—Houston [14th Dist.] January 31, 2012)
    (mem. Opinion) (Cause No. 14-10-00765-CV)

*Griffin v. Birkman*, 266 S.W.3d 189                                         16
    (Tex.App.—Austin 2008, pet. ref'd)

*Harrington v. Harrington*, 742 S.W.2d 722                                   22, 23
    (Tex.App.—Houston [1st Dist.] 1987)

*In re Bass*, 113 S.W.3d 735                                                 16
    (Tex.2003)

*In the interest of M.C.F*., 121 S.W.3d 891                                  16
    (Tex.App.—Fort Worth 2003, pet.dism'd).

*Knight v. Knight*, 301 S.W.3d 723                                                  16
    (Tex.App.—Houston [14th] 2009, no writ hist.).

*Mea v. Mea*, 464 S.W.2d 201                                                        16
    (Tex.Civ.App.—Tyler 1971, no writ hist.)

**Codes, Rules, and Statutes**

TEXAS CONSTITUTION, Article 16, §50(a)(3)                                           16

TEXAS BUSINESS & COMMERCE CODE §26.01(b)(3)                                         24

TEXAS FAMILY CODE §3.203                                                            16

TEXAS PENAL CODE §22.01                                                             28

**Statement of the Case**

Appellant Frederick Dawson Graham appeals the Final Decree of Divorce entered on September 3, 2014, in in Cause No. C1228635, by the Honorable Judge Jack Sinz, of the County Court at Law of Nacogdoches County, Texas.

**Issues Presented**

Appellant Frederick Dawson Graham has presented nine (9) issues:

1.    Whether the Trial Court abused its discretion in awarding Appellee an ownership interest in the marital residence;

2.    Whether the Trial Court erred in finding that the parties were tenants in common in the marital residence;

3.     Whether the Trial Court erred by divesting Appellant of one-half of his ownership in the marital residence and awarding that interest to Appellee;

4.     Whether the Trial Court abused its discretion in failing to find that the residence was not purchased with Appellant's separate property funds;

5.     Whether the Trial Court abused its discretion when it disregarded Appellant's allegation that Appellee committed fraud on the community estate;

6.     Whether the Trial Court abused its discretion in disregarding evidence of benefits received by Appellee during the marriage;

7.     Whether the Trial Court abused its discretion in finding that Appellant was at fault in the break-up of the marriage;

8.     Whether the Trial Court abused its discretion when it ordered Appellant to pay spousal support; and

9.     Whether the Trial Court abused its discretion in awarding a disproportionate part of the tract adjoining the residence.

## Statement of Facts

As indicated in Appellant's Brief, the parties were married on or about 2007 and ceased to live together as husband and wife on or about July 1, 2012. Appellant's Brief ignores that Appellee and Appellant lived together and were

looking to purchase a residence together many years prior to their date of marriage. (RR Vol. 1, pp. 42-43; RR Vol. 2, pp. 12-13; and Petitioner's Ex. 1, email dated December 26, 2008). During such time, Appellee ceased working on her own independent career to enter into an oral business partnership and service Appellant's career. (RR Vol. 2, pp. 40, 146-151). Appellant was able to bill clients for the parties' joint effort at a higher rate than Appellee's customary rate and all business expenses incurred by the couple were reimbursed by the clients. (RR Vol. 2, pp. 13, 40, 58, 115, 126, 148). Because Appellee traveled with Appellant on his business trips, the Trial Court found Appellee was only available to work with and for Appellant and was unable to continue her own, independent career as corroborated by witness Kathy Bush-Soule, Appellee's former client. (RR Vol. 2, pp. 148-49). By written correspondence, Appellant acknowledged Appellee's business services consistently from 2004 through 2011. (RR Vol. 2, pp. 17-21, 27-29, 115 and Petitioner's Exhibit 1, email(s) dated May 25, 2004; July 13, 2004; July 16, 2004; August 2, 2004; August 13, 2004; June 23, 2005; May 2, 2006; April 27, 2006; May 3, 2006; May 4, 2006; July 12, 2006; July 13, 2006; October 18, 2006; April 4, 2007; November 14, 2008; and January 14, 2011). Appellant has education, training, and experience in the field of accounting for oil and gas production with oil companies in that field, but relied upon Appellee's education, training, and experience in marketing, editing, and drafting of business

communications, presentation design and development, and back office administration. (RR Vol. 2, pp. 13-14, 17-21). Appellant's poor writing and spelling skills required Appellee to both edit all communications with clients and write the final work products presented for payment to clients. (RR Vol. 2, pp. 13-14, 17-21, 37-38).

With respect to the marital homestead, Appellee and Appellant collaborated together to find and decide upon the purchase of the Raguet Street residence in Nacogdoches in 2006. (RR Vol. 1, pp. 42-43). Appellant admitted on the stand that Appellee and Appellant were purchasing the residence together. (RR Vol. 4, p. 78). Prior to the purchase of the Raguet Street residence, Appellee and Appellant had previously attempted to purchase another, more expensive, residence in Nacogdoches in 2004. (RR Vol. 4, p. 80 and Petitioner's Ex. 1, emails dated April 29, 2004, May 25, 2004, July 21, 2004, July 30, 2004, August 2, 2004, August 17, 2004, August 25, 2004, and two (2) dated September 2, 2004). Appellee was the only connection with or inspiration to reside in Nacogdoches. Appellant had no independent connection with or incentive to reside in Nacogdoches. (RR Vol. 3, pp.74-76 and RR Vol. 4, pp. 77-78).

While the purchase of the Raguet Street residence was five months prior to the date of marriage of the parties, the parties had been working, romantically involved, and residing together for approximately five years. (Petitioner's Ex. 1,

7

email dated December 26, 2008). The entire initial down payment on the Raguet Street residence purchase was provided from business revenue generated by the combined efforts of Appellee and Appellant and paid from a First Bank and Trust of East Texas basic business checking bank account jointly owned by both Appellee and Appellant. (RR Vol. 2, pp. 99, 131-133 and RR Vol. 3, pp. 45-52 and Petitioner's Ex. 6). Appellee worked on and coordinated the entire closing on the Raguet Street residence, and Appellant consulted with Appellee on loan comparisons, cost savings and financial risk mitigataion. (RR Vol. 2, p. 28-29 and Petitioner's Ex. 1, email dated August 17, 2006). The Appellee testified and Appellant conceded that title to the Raguet Street residence was exclusively held in the name of Appellant because Appellee's credit score would have resulted in a higher mortgage interest rate. (RR Vol. 4, p 159 and Petitioner's Exhibit 1; email dated August 17, 2006). The payments in reduction of principal on the mortgage secured by the Raguet Street residence were made from business revenue generated by the combined efforts of Appellee and Appellant. (Petitioner's Exhibit(s) 4, 10, 11, and 12). Any and all inheritance or other separate property funds belonging to Appellant, including but not limited to Appellant's inheritance from his father, were deposited into a savings account commingled with other funds and then deposited into a money market account and comingled with other funds used to pay living expenses for both parties over the years prior to the

purchase of the Raguet Street residence. Appellee produced exhibits that evidence the business revenue used to fund the initial down payment and regular monthly payments on the mortgage secured by the Raguet Street residence. (RR Vol. 3, pp. 45-55 and Petitioner's Exhibit(s) 4, 10, 11, and 12). None of the funds used for the initial down payment or regular monthly payments on the Raguet Street residence were from funds received from the United Kingdom. (RR Vol. 4, p. 161-63). While Appellant's Brief alleges otherwise, Appellant himself admitted on the stand an inability to dispute Appellee's tracing evidence with respect to the Raguet Street residence. (RR Vol. 4, p. 161-63).

The purchase of the Back Lot to the Raguet Street residence was after the date of marriage of the parties. The Appellee testified and Appellant conceded that title to the Raguet Street residence was exclusively held in the name of Appellant because Appellee's credit score would have resulted in a higher mortgage interest rate. By correspondence to Appellee, Appellant acknowledged the savings received from their method of financing the Raguet Street residence only in Appellant's name. It was, however, Appellee who handled the closing coordination on the Raguet Street residence and Back Lot closings. Again, the parties agreed that title to the Back Lot was recorded exclusively in the name of Appellant, although purchased after the date of marriage of the parties, because Appellant was able to obtain better financing terms without the joinder of Appellee

on the loan. In full and final payment of the mortgage due and owing on the "Back Lot", Appellant borrowed $15,000 from Robert McCatty and Kathleen McCatty, his brother-in-law and sister.

Appellee testified that she never anticipated Appellant would make claim to the Raguet Street House or the Back Lot as his separate property. Appellee testified that Appellant had promised Appellee to add Appellee's name to title to the Raguet Street residence. For such reasons, Appellee served as the coordinator and "general contractor" for extensive repairs and remodeling to the Raguet Street residence and also ran the home since the time of purchase. And, Appellee would not have performed all of the contracting and remodeling efforts at the Raguet Street residence but for the understanding in reliance upon Appellant's representations that it was "their" home. (RR Vol. 3, p. 56). In fact, through numerous email correspondences to Appellee, Appellant represented to Appellee that he intended the home to be jointly owned, used, and enjoyed. (RR Vol. 2, p. 56 and RR Vol. 3, pp. 74-77; RR Vol. 4, pp. 78-82, 159; and Petitioner's Ex. 1; emails dated May 25, 2004; July 6, 2004; July 16, 2004; July 30, 2004; August 25, 2004; September 2, 2004; July 13, 2006; August 3, 2006; August 17, 2006; September 26, 2006; December 18, 2006; and October 14, 2008). There was certainly no evidence of intent for the Appellee to have no ownership interest in the Raguet Street residence or adjoining Back Lot.

Appellant admitted on the stand to fabricating, falsifying, and/or fraudulently executing documents with the intention that Appellee rely upon the truthfulness of the information contained in such documents, both before the marriage of the parties, to induce the Appellee into the marriage, and after the marriage of the parties, to induce the Appellee to refrain from making claims against Appellant. (RR Vol. 1, p. 66, 68 and RR Vol. 3, p. 5-7). Appellee testified that she discovered Appellant's fabrication, falsification, and/or fraudulent execution of documents when Appellant left Appellee to return to the United Kingdom under false pretenses. (RR Vol. 2, p. 72-76; RR Vol. 3, p. 35; and RR Vol. 4, p. 155). At the time of Appellee's discovery, the parties had not formally reached an agreement for divorce.

Appellant further admitted on the stand to lying to Appellee about his involvements with a Melody Welsh aka Melanie Welsh as well as the value and location of assets. (RR Vol. 1, p. 68 and RR Vol. 4, pp. 156-57). And further, Appellant made an admission against his interests via telephone voice recording Appellee that Appellant hid assets from Appellee in the United Kingdom. The assets Appellant admitted to hiding from Appellee were undisclosed and unidentified. For such and other reasons, Appellant's testimony and evidence were found to not be credible. Appellant's evidence pertaining to his prior marriage to Brigid Graham was not credible and the Trial Court was unable to determine or

verify the date(s) or terms of Appellant's divorce with Brigid Graham. In fact, the Trial Court found that Appellant has the use and enjoyment of his prior marital residence with his prior wife, Brigid Graham, in the United Kingdom, and access to assets and/or funds in an undisclosed amount located in the United Kingdom. (RR Vol. 1, pp. 49, 64, 67-68, 70-71, 83-85).

On March 31, 2014, Temporary Orders were entered in this matter ordering Appellant to make monthly payments of temporary spousal support to Appellee in the amount of Two Thousand and no/100 Dollars ($2,000.00), on the first (1st) day of each month beginning April 1, 2014, and thereafter until further order of this Court. Appellant altogether failed to make any payment of temporary spousal support to Appellee, in violation of the Temporary Orders entered March 31, 2014.

At trial, the Trial Court found that the marriage has become insupportable because of discord or conflict of personalities between Appellee Dena Marie Turner and Appellant Frederick Dawson Graham that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation. The Trial Court further found that Appellant is guilty of cruel treatment toward Appellee, including but not limited to acts of assault and/or battery on or about April 20, 2012, in February of 2012, in December of 2011, in October of 2011, in August of 2011, on or about July 4, 2010, in June of 2010, in August of 2009, and in June of 2008. (RR Vol. 2, pp. 45-62, 67-72). Appellant's

cruel treatment toward Appellee was corroborated by the witness Cheryl Gryder. (RR Vol. 2, pp. 154-56, 161). The Trial Court found that Appellee's discovery of Appellant's fabrication, falsification, and/or fraudulent execution of documents, combined with Appellant's cruel treatment of Appellee, were the fault and cause of the divorce. The Trial Court therefore determined that Appellant is at fault in the breakup of the marriage and that Appellee is entitled to a disproportionate division of the parties' marital estate.

The Trial Court found that the only evidence that Appellant gifted, conveyed, or transferred money to any other person during the marriage of the parties is Appellant's testimony as to providing funds to his prior wife, his children, and to Melody Welsh aka Melanie Welsh. The Trial Court found that there is no credible evidence that any community funds were used without the knowledge or consent of Appellant.

The Trial Court further found that, in the summer of 2012, Appellant made available to Appellee the sum of $20,000 to cover expenses while Appellant left Appellee under false pretenses to return to live with his prior wife Brigid Graham. At the time Appellant made the $20,000 available to Appellee, there was no agreement by and between the parties to divorce and settle the marital estate. During such time, Appellant used substantial community funds from the First Bank and Trust of East Texas bank accounts co-owned by Appellant and Appellee. (RR

Vol. 2, p. 104-105 and RR Vol. 4, p. 12). In fact, Appellee testified that in the summary of 2012, negotiations were taking place by and between the parties as to the division of the martial estate but that Appellant left Appellee under false pretenses to return to live with his prior wife Brigid Graham before any agreement could be made. Appellee further testified that prior to the time Appellee discovered Appellant's fabrication, falsification, and/or fraudulent execution of documents there remained the possibility of reconciliation and no agreement had been reached by and between the parties regarding divorce.

At the conclusion of trial, the Trial Court found that Appellee has incurred reasonable and necessary attorney's fees in excess of $10,000.00, and that Appellee is entitled to recover her reasonable and necessary attorney's fees from Appellant. The Trial Court further found that, for violation of the Temporary Orders entered March 31, 2014, Appellant is ordered to pay to Appellee $8,000.00, as outstanding support under such Temporary Orders through trial.

**Summary of the Argument**

Appellant challenges the Final Decree of Divorce entered on September 3, 2014, in in Cause No. C1228635, by the Honorable Judge Jack Sinz, of the County Court at Law of Nacogdoches County, Texas. Appellant contends that the Final Decree of Divorce entered against him should be reversed and that judgment should be rendered that Appellee has no ownership interest in the Raguet Street

14

residence. Appellant further contends that the division of the community property and spousal support issues should be remanded with additional instructions to (a) consider the evidence with regard to expenditures made by Appellee with community funds, (b) financial benefits received by Appellee during the marriage, (c) the disproportionate division of the Back Lot to the Raguet Street residence; and (d) the award of temporary spousal support by order of the Trial Court dated March 31, 2014. The record shows, however, that Appellant's points of error are frivolous and unsubstantiated by the evidence. Specifically, the evidence demonstrates that the initial down payment and mortgage payments on the Raguet Street residence were not from Appellant's separate property funds; that no expenditures by Appellee of community funds were without Appellant's consent or knowledge; that Appellant's wrongful acts are relevant, material, and rise to the level of fault in the breakup; that Appellant has access to undisclosed, unidentified funds in the United Kingdom which enable him to pay support to Appellee; and that Appellant's fault in the breakup justifies a disproportionate award to Appellee.

**Argument**

**Point 1. The Trial Court did not abuse its discretion in awarding Appellee an ownership interest in the marital residence.**

**Point 2. The Trial Court did not err in finding that the parties were tenants in common in the marital residence.**

**Point 3. The Trial Court did not err by divesting Appellant of one-half of his ownership interest in the marital residence and awarding that interest to Appellee**

As conceded in Appellant's Brief, the Trial Court does not abuse its discretion unless a decision is so arbitrary or unreasonable that it amounts to a clear error. *In re Bass*, 113 S.W.3d 735 (Tex.2003). Without abusing its discretion herein, the Trial Court divided marital property as it deemed right based on the credible evidence and facts presented. *Mea v. Mea*, 464 S.W.2d 201 (Tex.Civ.App.—Tyler 1971, no writ hist.). As provided in the Trial Court's Findings of Fact and Conclusions of Law, there exist reasonable bases for the unequal division of the property of the parties herein. *Knight v. Knight*, 301 S.W.3d 723 (Tex.App.—Houston [14th] 2009, no writ hist.). Further, such reasonable bases exist in light of findings founded on sufficient facts and evidence. *Griffin v. Birkman*, 266 S.W.3d 189 (Tex.App.—Austin 2008, pet. ref'd); and *In the interest of M.C.F.*, 121 S.W.3d 891 (Tex.App.—Fort Worth 2003, pet.dism'd). Under the inherent authority of Section 3.203 of the Texas Family Code and Article 16, Section 50(a)(3) of the Texas Constitution, the Trial Court has just and equitable discretion over the marital residence.

In an attempt to dismiss Appellant's fault and lack of credibility, Appellant's brief mischaracterizes the situation and status of assets in the months leading up to

16

the filing of divorce. Specifically, Appellant's brief alleges that Appellee obtained benefits to which she was not entitled during the time that Appellant had abandoned her to return to his former wife in the United Kingdom. As indicated in the reporter's record and Trial Court's Findings of Fact and Conclusions of Law Appellant's testimony and evidence were found to not be credible. (RR Vol. 1, p. 28; RR Vol. 3, pp. 69, 126; and RR. Vol. 4, p. 25-27, 145, 200-01).

Contrary to the factual allegations contained in Appellant's brief, Appellee and Appellant lived together and were looking to purchase a residence together many years prior to their date of marriage. (RR Vol. 1, pp. 42-43; RR Vol. 2, pp. 12-13; and Petitioner's Ex. 1, email dated December 26, 2008). During such time, Appellee ceased working on her own independent career to enter into an oral business partnership and service Appellant's career. (RR Vol. 2, pp. 40, 146-151). Appellant was able to bill clients for the parties' joint effort at a higher rate than Appellee's customary rate and all business expenses incurred by the couple were reimbursed by the clients. (RR Vol. 2, pp. 13, 40, 58, 115, 126, 148). Because Appellee traveled with Appellant on his business trips, the Trial Court found Appellee was only available to work with and for Appellant and was unable to continue her own, independent career, as corroborated by witness Kathy Bush-Soule, Appellee's former client. (RR Vol. 2, pp. 148-49). By written correspondence, Appellant acknowledged Appellee's business services

17

consistently from 2004 through 2011. (RR Vol. 2, pp. 17-21, 27-29, 115 and Petitioner's Exhibit 1, email(s) dated May 25, 2004; July 13, 2004; July 16, 2004; August 2, 2004; August 13, 2004; June 23, 2005; May 2, 2006; April 27, 2006; May 3, 2006; May 4, 2006; July 12, 2006; July 13, 2006; October 18, 2006; April 4, 2007; November 14, 2008; and January 14, 2011). Appellant has education, training, and experience in the field of accounting for oil and gas production with oil companies in that field, but relied upon Appellee's education, training, and experience in marketing, editing, and drafting of business communications, presentation design and development, and back office administration. (RR Vol. 2, pp. 13-14, 17-21). Appellant's poor writing and spelling skills required Appellee to both edit all communications with clients and write the final work products presented for payment to clients. (RR Vol. 2, pp. 13-14, 17-21, 37-38).

With respect to the marital homestead, Appellee and Appellant collaborated together to find and decide upon the purchase of the Raguet Street residence in Nacogdoches in 2006. (RR Vol. 1, pp. 42-43). Appellant admitted on the stand that Appellee and Appellant were purchasing the residence together. (RR Vol. 4, p. 78). Prior to the purchase of the Raguet Street residence, Appellee and Appellant had previously attempted to purchase another, more expensive, residence in Nacogdoches in 2004. (RR Vol. 4, p. 80 and Petitioner's Ex. 1, emails dated April 29, 2004, May 25, 2004, July 21, 2004, July 30, 2004, August 2, 2004,

18

August 17, 2004, August 25, 2004, and two emails dated September 2, 2004). Appellee was the only connection with or inspiration to reside in Nacogdoches. Appellant had no independent connection with or incentive to reside in Nacogdoches. (RR Vol. 3, pp.74-76 and RR Vol. 4, pp. 77-78).

The parties do not disagree that purchase of the Raguet Street residence was prior to the date of marriage of the parties. The evidence demonstrates, however, that while the purchase of the Raguet Street residence was five months prior to the date of marriage of the parties, the parties had been working, romantically involved, and residing together for approximately five years. (Petitioner's Ex. 1, email dated December 26, 2008). The evidence shows that the initial down payment on the Raguet Street residence purchase was provided from business revenue generated by the combined efforts of Appellee and Appellant and paid from a First Bank and Trust of East Texas basic business checking bank account jointly owned by both Appellee and Appellant. (RR Vol. 2, pp. 99, 131-133 and RR Vol. 3, pp. 45-52 and Petitioner's Ex(s). 4, 6, 10, 11, and 12). The Appellee testified and Appellant conceded that title to the Raguet Street residence was exclusively held in the name of Appellant because Appellee's credit score would have resulted in a higher mortgage interest rate. (RR Vol. 4, p 159 and Petitioner's Exhibit 1; email dated August 17, 2006). The payments in reduction of principal on the mortgage secured by the Raguet Street residence were made from business

revenue generated by the combined efforts of Appellee and Appellant (RR Vol. 2, pp. 99, 131-133 and RR Vol. 3, pp. 45-52 and Petitioner's Ex(s). 4, 10, 11, and 12). Any and all inheritance or other separate property funds belonging to Appellant, including but not limited to Appellant's inheritance from his father, were deposited into a savings account commingled with other funds and then deposited into a money market account and comingled with other funds used to pay living expenses for both parties. Appellee produced exhibits that evidence the business revenue used to fund the initial down payment and regular monthly payments on the mortgage secured by the Raguet Street residence. (RR Vol. 3, pp. 45-55 and Petitioner's Exhibit(s) 4, 10, 11, and 12). None of the funds used for the initial down payment or regular monthly payments on the Raguet Street residence were from funds received from the United Kingdom. (RR Vol. 4, p. 161-63). While Appellant's Brief alleges otherwise, Appellant himself admitted on the stand an inability to dispute Appellee's tracing evidence with respect to the Raguet Street residence. (RR Vol. 4, p. 161-63). Thus, the Trial Court found that neither the initial down payment nor the regular monthly payments on the mortgage secured by the Raguet Street residence were funded from Appellant's money market account, i.e. the account claimed to contain separate property funds belonging to Appellant.

Appellee worked on and coordinated the entire closing on the Raguet Street

residence, and Appellant consulted with Appellee on loan comparisons, cost savings and financial risk mitigation. (RR Vol. 2, p. 28-29 and Petitioner's Exhibit 1, e-mail dated August 17, 2006). Appellee testified and Appellant conceded that title to the Raguet Street residence was exclusively held in the name of Appellant because Appellee's credit score would have resulted in a higher mortgage interest rate. (RR Vol. 4, p 159 and Petitioner's Exhibit 1; email dated August 17, 2006). Appellee testified that she never anticipated Appellant would make claim to the Raguet Street House or the Back Lot as his separate property. Appellee also testified that Appellant had promised Appellee to add Appellee's name to title to the Raguet Street residence. For such reasons, Appellee served as the coordinator and "general contractor" for extensive repairs and remodeling to the Raguet Street residence. And, Appellee would not have performed all of the contracting and remodeling efforts at the Raguet Street residence but for the understanding in reliance upon Appellant's representations that it was "their" home. (RR Vol. 3, p. 56). In fact, through numerous email correspondences to Appellee, Appellant represented to Appellee that he intended the home to be jointly owned, used, and enjoyed. (RR Vol. 2, p. 56; RR Vol. 3, pp. 74-77; RR Vol. 4, pp. 78-82, 159; and Petitioner's Ex. 1; emails dated May 25, 2004; July 6, 2004; July 16, 2004; July 30, 2004; August 25, 2004; September 2, 2004; July 13, 2006; August 3, 2006; August 17, 2006; September 26, 2006; December 18, 2006; and October 14, 2008).

There was certainly no evidence of intent for the Appellee to have no ownership interest in the Raguet Street residence or adjoining Back Lot.

The most relevant authority to permit the Trial Court to determine that the Raguet Street residence was jointly owned by the Appellee and Appellant is found in *Aaron v. Aaron*, 2012 Tex.App. LEXIS 769 (Tex.App.—Houston [14th Dist.] January 31, 2012) (mem. Opinion) (Cause No. 14-10-00765-CV) and *Harrington v. Harrington*, 742 S.W.2d 722 (Tex.App.—Houston [1st Dist.] 1987). In the *Aaron* case, the husband challenged the trial court's findings and conclusions that the residence, acquired prior to marriage, was jointly owned by husband and wife prior to marriage. The trial court in the *Aaron* case found that even though title was acquired prior to marriage and held in the husband's name alone, the husband and wife jointly owned the house, each owning a one-half, undivided separate property interest in the house. The Court of Appeals in the *Aaron* case affirmed the trial court's judgment. The present case is similar to the *Aaron* case in that the parties looked for and decided upon the Raguet Street residence together, it was purchased in the husband's name solely due to the wife's poor credit, and the residence was used, enjoyed, and represented to be jointly owned. (RR Vol. 3, pp. 75-77; RR Vol. 4, p. 159; and Petitioner's Ex. 1; emails dated May 25, 2004; July 6, 2004; July 16, 2004; July 30, 2004; August 25, 2004; September 2, 2004; July 13, 2006; August 3, 2006; August 17, 2006; September 26, 2006; December 18,

2006; and October 14, 2008). In the *Harrington* case, the husband challenged the trial court's findings and conclusions that the residence was purchased by the parties as tenants in common, pursuant to an oral partnership, taking title in the husband's name for convenience and credit purposes only. *See Harrington*, 742 S.W.2d at 723-24. The Harrington court acknowledged the wife's plea that an oral partnership existed in the parties' purchase and ownership of the residence, entitling her to an undivided one-half interest. *See id*. The wife's testimony that she agreed to the husband applying for the loan and taking title in his name alone; combined with her lack of concern that he would ever assert that the property was his alone, their referring to the property as "our home", and the wife's contributions to improving the house, established that there was never any indication of intent for the wife to have no ownership interest. *See Harrington*, 742 S.W.2d at 725. The present case is similar to Harrington in that the evidence clearly demonstrates that, as a result of the Appellee's credit, the parties both benefitted from securing a mortgage and taking title solely in the Appellant's name, both parties continually referred to the residence as "our home", and both parties contributed to improving the house. (RR Vol. 3, pp. 74-77; RR Vol. 4, pp. 78-82, 159; and Petitioner's Ex. 1; emails dated May 25, 2004; July 6, 2004; July 16, 2004; July 30, 2004; August 25, 2004; September 2, 2004; July 13, 2006; August 3, 2006; August 17, 2006; September 26, 2006; December 18, 2006; and

October 14, 2008). Appellant's Brief altogether ignores these significant, contributing factors which justify the Trial Court's decision. Again, conveniently, Appellant's Brief mischaracterizes the evidence by falsely alleging separate property funds were used to acquire the Raguet Street residence and completely fails to acknowledge the admitted benefit both parties received from financing the acquisition without consideration of Appellee's poor credit. Nothing in Appellant's Brief justifies derogation from the reasoning provided in the *Aaron* and *Harrington* cases. Notwithstanding such fact, Appellant falsely claims that such cases are against public policy.

Appellant disingenuously cites Section 26.01(b)(3) of the Texas Business and Commerce code with reference to "agreement made on consideration of marriage or on consideration of nonmarital conjugal cohabitation". Such section is altogether inapplicable herein because none of the agreements to which Appellant makes issue are "on consideration of marriage". Thus any public policy discussions contained in Appellant's brief are superfluous and irrelevant.

**Point 4. The Trial Court did not abuse its discretion in failing to find that the marital residence was not purchased with Appellant's separate property funds**

The evidence demonstrates, however, that the initial down payment on the

Raguet Street residence purchase was provided from business revenue generated by the combined efforts of Appellee and Appellant and paid from a First Bank and Trust of East Texas basic business checking bank account jointly owned by both Appellee and Appellant. (RR Vol. 2, p. 99, 131-133; RR Vol. 3, pp. 45-54; and Petitioner's Ex. 6). The payments in reduction of principal on the mortgage secured by the Raguet Street residence were made from business revenue generated by the combined efforts of Appellee and Appellant (RR Vol. 3, pp. 45-55 and Petitioner's Exhibit(s) 4, 10, 11, and 12). Any and all inheritance or other separate property funds belonging to Appellant, including but not limited to Appellant's inheritance from his father, were deposited into a savings account commingled with other funds and then deposited into a money market account and comingled with other funds used to pay living expenses for both parties over the years prior to the purchase of the Raguet Street residence. Appellee produced exhibits that evidence the business revenue used to fund the initial down payment and regular monthly payments on the mortgage secured by the Raguet Street residence (Petitioner's Exhibit(s) 4, 10, 11, and 12). None of the funds used for the initial down payment or regular monthly payments on the Raguet Street residence were from funds received from the United Kingdom. In fact, Appellant admitted on the stand an inability to prove any tracing information for the payments on the Raguet Street residence. (RR Vol. 4, p. 161-63). Thus, the Trial Court found that

neither the initial down payment nor the regular monthly payments on the mortgage secured by the Raguet Street residence were funded from Appellant's money market account, i.e. the account claimed to contain separate property funds belonging to Appellant. (RR Vol. 3, pp. 45-55 and Petitioner's Exhibit(s) 4, 10, 11, and 12).

**Point 5. The Trial Court did not abuse its discretion when it disregarded Appellant's allegation that Appellee committed fraud on the community estate**

Contrary to the allegations made in Appellant's brief, the evidence demonstrates that Appellant was aware and consented to the expenditures for which he makes complaint on appeal, i.e. remodeling Appellee's aunt's house, since such efforts and expenses were expended by both Appellant and Appellee (RR Vol. 1, p. 16; RR Vol. 2, p. 69; and RR Vol. 4, p. 143). In fact, the evidence demonstrates that Appellant was not only aware and consented, but that he actually benefited from staying in the aunt's residence while obtaining medical assistance nearby. (RR Vol. 2, p. 69 and RR Vol. 4, p. 111). As for fraudulent expenditures of the community estate, the only credible evidence was that Appellant spent substantial sums to visit the United Kingdom and his prior family. (RR Vol. 2, p. 104-105 and RR Vol. 4, p. 12).

**Point 6.  The Trial Court did not abuse its discretion by disregarding evidence of benefits received by Appellee during the marriage**

The evidence demonstrates that the benefits received by Appellee during the marriage were in acknowledgment and compensation for the business services rendered by Appellee for their joint business enterprise.  (RR Vol. 1, p. 47).  By written correspondence, Appellant acknowledged Appellee's business services consistently from 2004 through 2011.  (RR Vol. 2, p. 115; RR Vol. 3, pp. 71-73; and Petitioner's Exhibit 1, email(s) dated May 25, 2004; July 13, 2004; July 16, 2004; August 2, 2004; August 13, 2004; June 23, 2005; May 2, 2006; April 27, 2006; May 3, 2006; May 4, 2006; July 12, 2006; July 13, 2006; October 18, 2006; April 4, 2007; November 14, 2008; and January 14, 2011).  Moreover, the evidence demonstrates that Appellant made transfers and/or withdrawals of community funds without the knowledge and/or consent of Appellee.  (RR Vol. 4, p. 12).  Altogether, the evidence demonstrates that Appellant's expenditures of community funds and/or benefits received exceed Appellee's corresponding expenditures and/or benefits.

**Point 7.  The Trial Court did not abuse its discretion in finding Appellant at fault in the breakup of the marriage**

It is uncontroverted that Appellant is guilty of cruel treatment, assault, and

battery of Appellee. (RR Vol. 2, pp. 47, 54, 56, 60-61, 67-68, 70-71). Such evidence is corroborated by witness testimony. (RR Vol. 2, pp. 155-56). While the Appellant attempts to dismiss these examples of cruel treatment, assault, and battery, Appellant seems completely unaware that a "touch" is what constitutes battery while assault only requires the threat of a "touch". *See* §22.01 TEXAS PENAL CODE. Thus, while attempting to dismiss the incidents of Appellant's assaulting Appellee, Appellant's Brief merely argues that many of the incidents of assault do not rise to the level of battery. Such disingenuous arguments by Appellant are immaterial and irrelevant. The evidence also clearly demonstrates that Appellant abandoned Appellee for several months in 2012, under false, deceptive pretenses. (RR Vol. 2, p. 72-76; RR Vol. 3, p. 35; and RR Vol. 4, p. 155). The evidence further demonstrates that it was during this period of abandonment in 2012, that Appellee was able to investigate and confirm the forgeries and fraud perpetrated by the Appellant upon the Appellee, to discover Appellant's extramarital solicitations, and to reach the final conclusion that the marriage was irreconcilable. (RR Vol. 2, p. 77-96, 102-03; and RR Vol. 4, pp. 156-57). Considering the Appellant's lack of credibility and admissions of lying to Appellee and hiding money from Appellee in the United Kingdom, Appellant was correctly found at fault. (RR Vol. 1, p. 28 and RR Vol. 3, pp. 69, 126). Similarly, Appellant's admissions of forgery and falsifying documents are significant factors

28

in the finding of Appellant at fault. (RR. Vol. 4, p. 25-27, 145, 200-01). For such reasons, Appellee is justly entitled to a disproportionate award against Appellant and spousal maintenance.

**Point 8.   The Trial Court did not abuse its discretion when it ordered Appellant to pay spousal support to Appellee**

The evidence demonstrates that Appellant has made admissions against his interests in direct contravention of the allegation made in Appellant's eighth point of error, i.e. that he lied to Appellee and hid assets from Appellee in the United Kingdom. (RR Vol. 1, p. 28 and RR Vol. 3, p. 69). The Trial Court acknowledged Appellant's credibility issues. (RR. Vol. 4, p. 25-27 and RR Vol. 4, pp. 145, 200-01). When it was convenient for Appellant, substantial sums of money were transferred from the UK to Appellant for which no debt or repayment obligations were commemorated. (RR Vol. 2, pp. 140-42 and RR Vol. 3, pp. 64, 131-32, 136-37). Appellant has admitted that he has the use and enjoyment of his prior marital residence with his prior wife, Bridgett Graham. (RR Vol. 1, pp. 33, 34). Further, Appellant failed to provide any credible documentation to dispute that he has access to substantial assets in the United Kingdom and repeatedly admitted to having accounts and access to funds in the United Kingdom. (RR Vol. 1, pp. 49, 64, 67-68, 70-71, 83-85 and RR Vol. 4, pp. 149-50, 152). And finally, the

29

evidence demonstrates that Appellant has access to substantial funds and paid his attorney during the period he was obligated to pay spousal support. (RR Vol. 2, pp. 140-42 and RR Vol. 3, pp. 64, 131-32, 136-37). For such reason, the Trial Court correctly concluded that Appellant has funds with which to pay support to Appellee. (RR Vol. 3, pp. 80-81 and RR Vol. 4, pp. 199-200).

**Point 9.    The Trial Court did not abuse its discretion in awarding a disproportionate part of the Back Lot tract adjoining the Raguet Street residence**

As discussed herein, the Trial Court justifiably found the Appellant at fault and accordingly awarded a disproportionate part of the Back Lot tract adjoining the Raguet Street residence. As the purchase of the Back Lot to the Raguet Street residence was after the date of marriage of the parties, title to the Raguet Street residence was exclusively held in the name of Appellant only because Appellee's credit score would have resulted in a higher mortgage interest rate. By correspondence to Appellee, Appellant acknowledged the savings received from their method of financing the Raguet Street residence only in Appellant's name. (RR Vol. 4, p 159 and Petitioner's Exhibit 1; email dated August 17, 2006). It was, however, Appellee who handled the closing coordination on the Raguet Street residence and Back Lot closings. (RR Vol. 2, p. 28-29). Again, the parties agreed

30

that title to the Back Lot was recorded exclusively in the name of Appellant, although purchased after the date of marriage of the parties, because Appellant was able to obtain better financing terms without the joinder of Appellee on the loan. None of the funds used for the initial down payment or regular monthly payments on the Back Lot were from funds received from the United Kingdom. In fact, Appellant admitted on the stand an inability to prove any tracing information for the payments. (RR Vol. 4, p. 161-63). Thus, the Trial Court found that no funds used in payment on the Back Lot were from any account claimed to contain separate property funds belonging to Appellant. (RR Vol. 3, pp. 45-55 and Petitioner's Exhibit(s) 4, 10, 11, and 12). As for the outstanding "loan", i.e. the $15,000 Appellant borrowed from Robert McCatty and Kathleen McCatty, Appellant's brother-in-law and sister, the Final Decree of Divorce entered herein provides for final payment of same.

**Conclusion**

As set forth above, the evidence clearly demonstrates that the Trial Court did not abuse its discretion. The Final Decree of Divorce entered herein is justified and founded on careful considerations of all credible evidence provided herein. The Trial Court justifiably concluded that Appellant has credibility issues; committed relevant, material, and wrongful acts against the Appellee to rise to the

31

level of being at fault in the breakup of the marriage; and has access to assets hidden from Appellee in the United Kingdom. Moreover, the Trial Court reasonably concluded that the Raguet Street residence and Back Lot were acquired by funds obtained by the efforts of both parties; were titled and financed exclusively in Appellant's name solely for the purpose of obtaining better credit terms; were used, enjoyed, and represented to be jointly owned; and were substantially improved by the efforts of Appellee in justifiable reliance upon Appellant's representations that the property was jointly owned. And finally, the Trial Court reasonably concluded that no expenditures by Appellee of community funds were without Appellant's consent, knowledge, participation, or benefit. For such reasons, the Trial Court did not abuse its discretion in awarding Appellee a disproportionate award.

**Prayer**

Wherefore, premises considered, Appellee Dena Marie Turner prays that this Honorable Court affirm the Final Decree of Divorce entered against the Appellant Frederick Dawson Graham on September 3, 2014, under Cause No. C1228635, in the County Civil Court at Law of Nacogdoches County, Texas.

Respectfully Submitted,

32

*/s/ Jarett T. LaRochelle*

Jarett T. LaRochelle
Texas Bar No. 24041296
One Riverway, Suite 1700
Houston, Texas 77056
713-907-8668 telephone
713-840-6351 facsimile
ATTORNEY FOR APPELLEE DENA
MARIE TURNER

**Certificate of Compliance**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a convention typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains less than 6,000 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ Jarett T. LaRochelle*

Jarett T. LaRochelle

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing notice has been forwarded to the following parties or their counsel of record in accordance with the Texas Rules of Civil Procedure on this the 26th day of May, 2015:

Mr. Tom Rorie
State Bar No. 17238000
210 North Street
Nacogdoches, Texas 75961
936-559-1188 telephone
936-559-0099 facsimile

_/s/ Jarett T. LaRochelle_
Jarett T. LaRochelle